May it please the court. I'm Robert Stone. I'm here on behalf of Jared Fournier. And to the extent that the facts in the court will allow, I would adopt Mr. Buckel's arguments. Again, to the extent that the facts in the court will allow. In my brief, I tried to concentrate or focus on the elements of the crime that the government needed to prove. And as the discourse that this court has had with Mr. Giuliateri indicates, I think, the issue clearly is the language when such authorization is required. So the elements under 26110B is that you need to be constructing or maintaining a residence without a plan of operations, when without authorization, when such authorization is required. And as the court has indicated, and I think the government failed to respond or eventually admitted, there are times when a plan of operations is not required. There are also times when even a notice of intent is not required. If you look at 228, the initial, there are three levels of mining with regard to a plan of operations. One, if the operator feels that his mining activities may cause a significant disturbance, then he files a notice of intent. If it's likely, then a plan of operations is necessary. In this case, Mr. Fournier and Mr. Ames were operating a hand sluice box, a dredge in the summertime. Again, same sort of minimal mining activities, but on a valid claim, mining and prospecting. So the Forest Service sent out a geologist, Mr. Johnson, who did a report. It's in the government's excerpts of records. Well, before you get to that, just so we understand, what were they, what was Mr. Fournier doing on the property, on the claim? Well, that sort of relates to the second issue, which is that Mr. Fournier and Mr. Ames were not allowed to put on any real evidence as to what their mining activities were because of the court's. You said there was an authorization when required, and you went through the notice of intent, and then if it steps up, the activities are likely to create certain conditions on the ground, then the plan of action needs to be filed. There's also this special use permit that deals with residency. So what are you contending that Mr. Fournier did or didn't have to do here? I'm contending that he didn't have to have a plan of operation. And he didn't have to do anything. He could just go out there and do what he was doing without doing anything vis-à-vis the Forest Service? If he's on a valid claim conducting mining activities, then I believe that, yes, I don't know whether you can say he can do anything, but I believe he can occupy the claim. He can occupy it year-round, and is it your, I'm just trying to understand, are you arguing that he could go out on the claim, do gold, you know, panning for gold, and live on the claim year-round, and he did not need to file anything with the Forest Service? If he's conducting legitimate mining activities on a valid claim, then, yes, my contention is that he can, but that's not really what I want to focus on. He was convicted of a criminal offense, and what I would like to focus on is whether the government proved those. Well, no, wait a minute. You started out, counsel, saying you wanted to talk about when authorized. Well, that's an element of the crime. Yes, so let's finish on that. You can argue about the crime. I'd still like to understand what your argument is. Well, I'm arguing that his overall mining activities did not rise to the level where a plan of operations or anything, not even a notice of intent. Well, if you look at the regulations, it really leaves it up to the operator to decide whether their mining activities may cause significant disturbance. So if the miner decides that they may not, then I don't have the regulations required. And he doesn't have to do anything, and the Forest Service can't do anything? The Forest Service can trespass him. There is a civil remedy. If they don't think it's a valid claim, if they don't think that he's conducting mining activities on a valid claim or his mining activities are not valid, then they can institute civil remedies, which they did for many, many years, and trespass him, get him off. And I'm proposing that that's what should have been done in this case. Okay. If there was a — Wait a minute. We're in a criminal proceeding, right, and you were going to talk about the elements the government had to prove, and one of them was that he needed an authorization. Right. And I think the government's own exhibits show that he didn't. I mean, they have this geologist's report. What evidence did you propose to submit to the district court that would establish that he didn't need a plan of operations, The level of his mining activities, the level of his operations was what they sought. And, again, these were operating a sluice box in the dry season. In the summer, they're in the river with the dredge. In the winter, they're hand-sluicing on the riverbank and prospecting elsewhere on the claim. Now, the government's case was basically that the Forest Service had determined that authorization was needed, correct? No. The Forest Service determined that their mining activity, their occupancy, was not reasonably related to their mining activities, which is not a criminal violation. There's a civil remedy for that, and that's the decision they cannot enforce. Well, then they needed a special use permit. Well, they're not camping there, so they don't need a special use permit. They're mining. Oh, I see. So there's a specific, I think it's section 251, says that special use authorization doesn't apply to mining activities. So if there's a dispute about whether they were mining or not, then the appropriate remedy is to tell them they need to go because their occupancy is not reasonably related to their mining activities. If they don't, then to civilly trespass them, to evict them. Now, did they ever try to argue to the Forest Ranger that their activity was related to their mining? I'm sorry? Did they challenge the Forest Service's determination administratively? No, they got a letter saying that you need to vacate because your occupancy is not reasonably related to your mining activities. But that has nothing to do with what – and they didn't challenge it. So – They didn't go to the next higher – There is an administrative proceeding for challenging that decision. But very briefly, my argument with regard to whether they can present evidence on that in a criminal proceeding is that they were not collaterally attacking the administrative decision. They were seeking to present evidence in defense of a criminal charge in a criminal proceeding. And I think they have a constitutional right to do that. They don't need to be undoing – What do you do with Mendoza Lopez? Well, Mendoza Lopez was an immigration proceeding where I think they allowed him to challenge him because he had no further ability to challenge the administrative decision. But again, we're not challenging the administrative decision. I'm not collaterally attacking the Forest Service's decision. I can't, I don't think, in this proceeding their decision that the occupancy was not reasonably related to the mining activities. I'm saying that when you're charged with a criminal offense and one of the elements is your mining activities and whether they're significant enough to require a plan of operations, then you should be allowed – you have a constitutional right to present that defense. Okay. Thank you. Okay. Before addressing counsel's arguments in the Ames and Forney matter, I just wanted to point out, if I may, two record citations, looping back to our previous discussion regarding the claims. They are SCR 68 and SCR 71, which talk about the different claim numbers between Carlin McBroom and Ed Needles, and our brief discusses why those are part of the record on appeal and part of the trial record. The essential facts of this case are clear. These defendants were residing indefinitely in permanent year-round residence in trailers and other related structures on the site without having submitted a notice of intent, without having applied for a plan of operations, without a special use authorization, and without any inquiry whatsoever to the Forest Service as to what level of authorization may be required. The Forest Service reached a determination and explained in its June 15, 2009 letter that authorization was either going to be necessary under the special use authorization or their occupancy would have to be reasonably incidental to mining, and it wasn't. That decision was not appealed, and it was not appealed administratively, and the trial court properly did not allow them to collaterally attack it. With the ---- If it had appealed administratively, what would they have done? Well, there are 228.82. There are two subsections of 228.82 which talk about the ability to appeal a decision of the authorized official. There is an avenue for appealing a decision that relates to special use authorizations. There is an avenue that relates to appealing a decision that relates to operating plans. The letter from the Forest Service on June 15, 2009 made clear, and the regulation itself makes clear, there are two avenues to obtain authorization if you want to reside on National Forest System lands. You can get a special use authorization or you can get ---- or you can be approved through an operating plan for your residence. The ---- what happened here is we're talking about year-round permanent residence in trailers. That is clearly not camping. That is not an overnight to do some panning. That is going to require some form of authorization. We cited in our brief a number of cases that talked about the fact that the residence alone can constitute a significant disturbance. The Brunskill case addresses that. A couple of district court decisions, Knapp and Langley, both talk about that. The regulations are structured so that minors are to make the judgment. If it might cause a disturbance, file a notice of intent. Let the Forest Service tell you whether you need to go further and get a proposed plan of operations. If it's likely to cause a significant disturbance, as would seem obvious with multiple trailers and structures and year-round permanent residence in the forest, you should, in lieu of a notice of intent, you should be filing a proposed plan of operations. They did none of these things. During site inspections, the Forest Service asked, do you have authorization? The answer came back, not a query about how do I go about getting it or what is the appropriate thing to do. The answer came back, you can't regulate me. I'm a minor. Get off my land. It's clear that they were aware of these requirements and simply did not believe that these reasonably incident to mining limitations on residency should apply to them as minors. And as Mr. Evans noted before, if we're to establish a greater degree of mining at the site, well, that mining needs to justify the level of residence that is being conducted. Here, we have a huge disconnect. We have site inspections and a mineral examiner's report showing no real sign of serious mining happening at all, no signs of workings were out of season during one of the site inspections. And so we have to compare that level of mining to what we have as multiple individuals living year-round in trailers with other structures. So it's clear in those circumstances that some form of authorization would be required. None of the above was not an option for these individuals. So what was the other? How did the government prove up its case? I didn't read the transcript. Just explain to me. Well, the government, as we addressed before and as the Lowery case established, all we needed to show was that they are residing on forest system land. What evidence did you present in this case? The testimony of the mineral examiner talking both about his report and his site inspections that indicated that they were in fact living there, that he confirmed the residence on the site, and his review of the purported mining activities that were occurring on the site and a lot of discussion about how it seemed like they were negligible, minimal to nonexistent. The burden then shifted to them to establish the affirmative defense that authorization was not required. And did they offer any evidence on that? They tried to offer evidence concerning the level of mining, as counsel noted. Judge Mossman correctly said, well, that really amounts to all you're trying to show is that there's some inaccuracies in determination of the mineral examiner, which was the basis of the June 15th letter. That's a collateral attack because the only purpose of that is to show that there's an inaccuracy there. And that's not allowed under Lowery and Frontskill and other cases. Didn't the examiner testify as to what the level of activity was? He did, and he testified that it was minimal. And here what — So why can't they attempt to rebut that? Well, the rebuttal would have served, and he confirmed through questions of counsel, the purpose of the rebuttal would have been to show that there's some inaccuracy in the underlying determination, which they failed to appeal. So I think that's the way it was handled. If there are no further questions. I just want to make sure I understand. If I'm ticketed for being on a forest site and it's a misdemeanor and I'm called into court, I can't put in evidence that says all I was doing there was this de minimis kind of activity for which I don't need any. I'm not in violation of any rule. Well, that would have been short of — well, I guess if we were to start with — Yeah, but that's supposed to have — Which was subject to appeal and that was not pursued. Well, I suppose there has to have been. Well, here, an affirmative defense to this crime is that authorization is not required. Yeah. Here, their ability to present their affirmative defense was complicated by the fact that there were already findings by the Forest Service reflected in the determination that was made by the district ranger that was not appealed. So once — Without your situation, that would not be the case. So if they go through the — if there is a process by which the Forest Service has given them warning and everything else and told them what they have to do and ruled against them and they have decided not to comply, then the Service enforces it criminally. They can't go back and contest any of the evidence that the — or facts that the Forest Service found to be true. No, they can't, because all of that — first of all, it's their burden to show that it wasn't required. And all of that would constitute a collateral attack on the underlying decision, which this Court has said is impermissible. Could a criminal prosecution — Because they — I'm sorry. Could a criminal prosecution have been brought simply if the forest ranger had gone out, found them there and filed the same complaint, misdemeanor complaint against them, no prior Forest Service activity, and they just were there and they went straight to a violation? I believe in theory — I believe in theory it could, that we could have gone straight to a — would have gone straight to a misdemeanor information. Then they would — their defense would be, oh, wait a minute. We weren't violating the law. Well, the defense would be that authorization wasn't — Right. — wasn't required. Yeah, because also what we were doing doesn't trigger any authorization. Right. And again, this might be a much more difficult question in a close case where we have minimal impacts, we have minimal involvement in the site. Here we're talking about year-round permanent residency in trailers of multiple individuals on a site. It's clear that some form of authorization, whether it be a special use authorization or a proposed plan or a plan of operations, is going to be required. Let me ask you this, though. If the administrative determination is sufficient, you can't challenge it in court, why was it necessary to call the investigator to lay out all the facts? Well, because — Why didn't the government just, you know, here's — here's — we made this finding, we cited them, we gave it to them. They didn't appeal it. End of story. I don't recall anything in the transcript or any discussion of that as an option. Mr. Evidence, who tried the case, is going to be up next. He could — he could perhaps address that. No, but let me ask you as a matter of law. I mean, why — why — why do you have to put on — why do you have to call this other evidence? Well, it wasn't a secretive tax trial. And then — and then they get up and they try to rebut that, and the judge says, no, you can't.  Well, what the — the nature of that finding is that the Forest Service had already determined — What kind of trial is this? Because that's kind of an odd trial. Pardon me? It strikes me as kind of an odd trial. It is somewhat unusual, but — and this one wasn't a stipulated tax trial, so — No, I know. That's not curious. The evidence needed to be — Right. The evidence needed to be brought to light. But you're — but the whole point is, you know, like in a 1326, there's certain elements for — you know, that's a criminal — now I'm jumping over to Mendoza-Lopez. In Mendoza-Lopez, basically they have — they admit the administrative findings that there's been a prior removal or entry. Right. And, you know, that's pretty much it. But this isn't — this is quite actually not that situation, because there is a right to appeal. There is explicit notice and a determination that authorization is required, and you don't have it. They had multiple — they had multiple options at that point. So when you got the June 26th letter, was he given notice that he could contest that with the forest ranger, regional forest ranger? The letter itself does not say that, but — But how does he know that he has a right to go further? The Forest Service regulations provide and identify appealable decisions. Is he told about — In this decision — But he also told that he has a right to go to court. In the regulation — No. I mean, in the letter. The letter does not say that. But the letter is clearly a determination and a finding that both — that you require authorization and that we looked and we don't find any. And the letter also was explicit in — Was there a time limit? Was he told how much time he has to appeal to the forest — to the regional forest director in that letter? The letter does not. The regulations specify the requirements. But how is he supposed to know? Well, these individuals are clearly familiar with the regulations and the statutes, and we have multiple pro se filings and we have Mining Act of 1872 text posted up on signs. These individuals are familiar with the governing — the governing regime and what applies to them, and that there is a prohibition on residing. This is kind of an odd — an odd trial. And here, you have to recall, they're only permitted to reside on their claim to the extent it's incidental to their — to their mining. The mining laws do not authorize them to do uses unrelated to mining on their property. The only residence that's allowed is that which is incidental. Well, I understand. But I'm just trying to — you know, this was a criminal trial. These guys were convicted of a misdemeanor. That's right. It was a Class B misdemeanor with a $750 fine, which was largely suspended. Well, so what? I mean, I don't care if it's — he was convicted of a misdemeanor, and he was subjected to — to — what was it? A supervised release or whatever, probation, whatever it was, for a year. Correct. Is that right? Well, here I think it is — here there is a great deal of notice. He — the Forest Service has been out there inspecting the site, asking them about their authorization. We have a complete absence of an effort to determine what they need to do here. Well, no, but I'm more concerned about their ability, what they can — what takes place at this trial. And apparently what you're telling me is nothing really takes place at this trial. It's sufficient — it's sufficient to have the letter from the Forest Ranger making the finding. It was never contested in the story. Well, I should say — I should say that. Guilty as charged. I should say that Judge Mossman did take a fair amount of evidence — a fair amount of evidence and testimony from Mr. Ames regarding his mining activities — regarding his mining activities at the site. Okay. All right. Thank you, Your Honor. Stay tuned for the sequel. All right. Do you have — I'll give you a minute if you had something more to say. Well, I just wanted to point out that the June letter is an administrative decision. The finding is that the occupancy is not reasonably related to the mining activities. There is no finding in there that they need a plan of operations. And, in fact, if you look at the geologist's report, he says, based upon the mining activities, they don't need a plan of operations. If they submitted one, we would never approve it because, again, the ultimate decision in the finding is that it's not reasonably related to the mining activities, which is not a violation of 26110B. Okay. Thank you. All right. Ames and Fournier is submitted.
judges: Fisher, Paez, Clifton